IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CREEKSTONE FARMS PREMIUM BEEF,
L.L.C., and THE NOVA SCOTIA BANK,

   Plaintiffs,

vs.            Case No. 05-1083-JTM

SUITT CONSTRUCTION COMPANY,
INC., et al.,

   Defendants.

MEMORANDUM AND ORDER

  This matter is before the court on the defendant Suitt Construction Company's Motion to Enforce Order, which seeks enforcement of the court's order of August 13, 2004 in Case No. 04-1052-JTM. Suitt's motion has followed the earlier Motion for Summary Judgment filed by plaintiffs Creekstone Farms Premium Beef and The Bank of Nova Scotia, which is otherwise not fully briefed. At issue between the parties is whether certain claims — previously advanced in Suitt's counterclaim in the prior action — are subject to arbitration.

  There is an extensive history of litigation between the parties. First Beef Operations entered into a Design-Build contract with Suitt Construction to build a meat-processing facility on May 25, 2000. The contract between the parties includes both a Construction Contract and an incorporated General Conditions Contract. In addition to building a new plant, the contract called for First Beef to renovate an

existing plant in Arkansas City, Kansas.  Article 10, Section 10.3 of the General Conditions Contract requires arbitration of "any claims, disputes or controversies between the parties arising out of or relating to the Agreement, or the breach thereof."

The new facility was opened in August 2001, and completed in December 2001.  The total contract price, including change orders was $97,954,372.  Plaintiff The Bank of Nova Scotia, as the lead construction lender, syndicated loans totaling in excess of $160 million.  On January 25, 2002, Suitt filed a verified mechanic's lien statement against the meat plant in the Nineteenth Judicial District, Cowley County, Kansas. The amount of the lien was $6,293,719.00 plus interest, fees and costs.

First Beef filed for Chapter 11 bankruptcy on March 4, 2002.  On August 15, 2002 the case was converted to a Chapter 7 proceeding.  During the bankruptcy, the Bank and Creekstone Farms Premium Farm Brands, L.L.C. formed Creekstone Farms Premium Beef Holdings.  The Bank owns an eighty-five percent interest in the holding company.  This holding company in turn formed plaintiff Creekstone Farms Premium Beef, L.L.C.  Creekstone Farms Premium Beef then bought some First Beef assets from the bankruptcy trustee on January 10, 2003, paying $28.7 million.

The Bank filed a motion for relief from the automatic stay on October 10, 2003, seeking permission to pursue "certain claims, causes of action and affirmative defenses [that] may exist against Suitt for breach of contract, negligence or other causes of action relating to defective or faulty construction provided by Suitt." The Bank claimed a security interest in all of First Beef's "contracts, contract rights documents, commercial tort claims, payment intangibles and general intangibles...[which] covers the Construction Claims."

2

Suitt Construction opposed the motion, arguing that the contract rights held by First Beef under the construction contract were transferred to Creekstone Farms Premium Beef in the asset sale, and thus the Bank had no standing to assert any claims. On November 14, 2003, the bankruptcy court overruled the various objections to the motion, including Suitt Construction's objection, and granted the Bank's motion.

Plaintiffs Creekstone Farms Premium Beef and the Bank then instituted actions for breach of contract and breach of warranty. In early 2003, Suitt began an action in the District Court of Cowley County, Kansas, seeking declaratory relief on its claims against First Beef's Trustee, the Bank, and Creekstone Farms Premium Beef.

The matter was addressed to this court in its order in the first federal action, Case No. 04-1052-JTM. Suitt sought to dismiss the action, contending that the arbitration clause was applicable here. The court granted that motion in essential part, and the court now finds that that order controls the outcome of the present matter, and that plaintiffs have waived any objection to arbitration of all claims advanced in the first federal action, whether directly advanced by the plaintiffs or (as now in issue) those advanced by Suitt in its counterclaim.

Suitt's motion clearly sought dismissal of "this action," that is, the entire case in favor of arbitration; it did not seek to arbitrate part of the case and then serially litigate the remainder. (Case No. 04-1052-JTM, Dkt. No. 9, at 12.) In their response, plaintiffs made no attempt to suggest that the counterclaim was a separate, nonarbitrable claim. Rather, plaintiffs argued that Suitt had waived its right to arbitrate, and the the tort claims of the plaintiffs were nonarbitrable, arguments which the court explicitly rejected it its order. Otherwise, plaintiffs merely argued that rather than dismissal there should be "a stay of the proceedings." (Case No. 04-1052-JTM, Dkt. No. 12 at 9.) The counterclaim was clearly pending at the time plaintiffs

3

sought a stay of the "proceedings." Similarly, in its reply, Suit indicated that it too would not object if the court decided to stay "this case" rather than dismiss it. (Case No. 04-1052-JTM, Dkt. No. 20, at 7.)

If the court did not separately address the counterclaim in the order of August 13, 2004, this is simply because the plaintiffs made no attempt to object to the application of the stay to all issues in the case, and thus the issue was never raised. The court held that the plaintiffs were bound by the arbitration provision, and ordered the parties to "resolve *the issues herein* via arbitration," and stayed the case. (Case No. 04-1052-JTM, Dkt. No. 22, at 8) (emphasis added). Had there been any intention of segregating out the counterclaim, there would have been additional orders governing scheduling, discovery, and trial preparation. No such orders were entered, and no party, including plaintiffs, offered any suggestion that the court's order of August 13, 2004 should not be taken at face value.

In light of this conclusion, the court finds that plaintiffs' Motion for Summary Judgment is fatally flawed and without merit. That motion will be denied.

IT IS ACCORDINGLY ORDERED this 4th day of November, 2005, that the defendant's Motion to Enforce Order (Dkt. No. 10) is granted; plaintiff's Motion for Summary Judgment (Dkt. No. 7) is denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE